<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RAUL FLORES, :
:
        Petitioner, :    Civil No. 11-4269 (ES)
:
    v. :    OPINION
:
CINDY SWEENEY, et al., :
:
        Respondents. :

**SALAS, DISTRICT JUDGE**

Petitioner Raul Flores ("Petitioner"), a prisoner currently confined at East Jersey State Prison in Rahway, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the petition will be denied.

**I.    BACKGROUND**

This Court, affording the state court's factual determinations the appropriate deference, *see* 28 U.S.C. § 2254(e)(1),[1] will simply reproduce the recitation of facts as set forth by the Superior Court of New Jersey on post-conviction relief:

> In the afternoon of November 5, 1995, Mario DeJesus Alarcon Medina was found dead in an empty lot in Cliffside Park. Medina was last seen between 8:00 p.m. and 9:00 p.m. the night before. Medina was stabbed four times in his upper body. For several months following the murder, police attempted to locate an individual named Julio Ramon Alvarez for questioning but were unable to locate him. During their investigation, police learned that [Petitioner], Raul Flores, was distantly related to Medina through marriage. Based on this information, on April 2, 1997, at approximately 7:00 a.m., Detective John Palotta, Investigator Louis

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

Alvarez and other police personnel went to [Petitioner's] home. Detective Alvarez acted as a translator, telling [Petitioner] and his wife, Daysi Flores, that the police wanted to question them and they needed to accompany officers to the police station. [Petitioner] took his daughter to a neighbor's home while his wife changed clothes. [Petitioner] and his wife then accompanied police to the Cliffside Park Police station. Shortly after they arrived, police put [Petitioner] and his wife in separate locations. Before questioning [Petitioner], Detective Alvarez orally reviewed the form, written in Spanish, with [Petitioner]. [Petitioner] signed the form; however, [Petitioner] claims that Investigator Alvarez read the last paragraph of the form "I'm not willing to answer and give a statement without the presence of an attorney." [Petitioner] then wrote the letter "N" then crossed it out and wrote "Si," which translates into English as "yes." Detectives then questioned the [Petitioner] about Medina's murder. [Petitioner] claimed that the evening of the murder, he and his wife went to a party and that after returning home from the party, he went to his place of employment at approximately 10:00 p.m. to repair an embroidery machine and left his work at approximately 11:00 p.m. and returned home.

After police questioned the [Petitioner] for a period of time, he was left alone in the interview room for approximately two hours. During this time, detectives were able to locate and interview Julio Ramon Alvarez. During the interview, Julio Alvarez told detectives that [Petitioner] was Alvarez's supervisor at the embroidery shop and that prior to Medina's murder, [Petitioner] had told Alvarez that he was having problems with Medina, that Medina was telling people that he (Medina) had a sexual relationship with [Petitioner's] wife, Daysi. Alvarez told police that at approximately 10:00 p.m. on November 4, 1995, he paged [Petitioner] from the embroidery shop, that [Petitioner] came to the embroidery shop to repair a machine and left at approximately 11:00 p.m. Alvarez told police that on November 5, 1995, the morning after the murder, [Petitioner] told Alvarez that he had killed Medina and in an effort to thwart suspicion, he planned to help pay the cost of sending Medina's body to El Salvador for burial.

After police completed their interview with Alvarez, and apparently at Alvarez's suggestion, police put Alvarez and [Petitioner] in the same room. After sitting in silence for a period of time, [Petitioner] began to cry, turned and looked at the police officer and said, "I killed him. Are you happy? I killed him." Police removed Alvarez from the room and [Petitioner] went on to tell police that after leaving the embroidery shop, he stopped his car in an empty parking lot to urinate. [Petitioner] told police that he saw Medina standing in the lot, waiving a knife at him. As a result, [Petitioner] kicked Medina, wrestled the knife away from him and then stabbed Medina four times. [Petitioner] then said that he broke the knife into two pieces and threw it in a storm drain. Although [Petitioner] drew a map of the murder scene indicating where he discarded the knife, police were unable to locate it. [Petitioner] was placed under arrest.

Later in the day, with Detective Rodriguez present, [Petitioner] and Daysi Flores

>    were reunited in [Petitioner's] holding cell.  There, [Petitioner] admitted to his wife that he killed Medina because Medina was spreading rumors that he (Medina) was having a sexual affair with Mrs. Flores and proceeded to tell his wife the details of the murder, which were consistent with his earlier statements.

(Resp'ts' Br., Ex. 7, PCR Opinion 2-4).

On April 2, 1997, Petitioner was charged with purposely and knowingly causing the death of Mr. Medina.  (*Id.* at 4).  On December 23, 1997, a grand jury returned an indictment charging Petitioner with purposeful murder, contrary to N.J.S.A. 2C: 11-3a(1)(2) (count one); possession of a weapon (knife) with the purpose to use it unlawfully, contrary to N.J.S.A. 2C:39-4d (count two); and possession of a weapon (knife), under circumstances not manifestly appropriate for such lawful uses as it may have, contrary to N.J.S.A. 2C:39-5d (count three).  (*Id.*).  On April 23, 1998 and May 12, 1998, a hearing was held and Petitioner's pretrial motion to suppress was denied. (*Id.*).  After a jury trial, Petitioner was found guilty of all counts and on July 31, 1998, Petitioner was sentenced to thirty years of incarceration with a thirty-year parole ineligibility period.  (*Id.*).

Petitioner filed a notice of appeal with the Appellate Division on September 16, 1998. (*Id.*).  On December 20, 1999, the Appellate Division affirmed Petitioner's conviction for murder and merged the conviction for murder and possession of a weapon and remanded the matter for entry of an amended judgment.  (*Id.*).  Petitioner filed a petition for certification on March 6, 2000 and on June 6, 2000 the New Jersey Supreme Court denied the petition.  (*Id.* at 5). Thereafter, Petitioner filed three post-conviction relief ("PCR") petitions, all of which were denied by the trial court, and said denials then affirmed by the Appellate Division.  *State v. Flores*, 2007 WL 1119563 (N.J. Super. Ct. App. Div. Apr. 17, 2007); *State v. Flores*, 2009 WL 816508 (N.J. Super. Ct. App. Div. Mar. 31, 2009); *State v. Flores*, 2011 WL 2335047 (N.J. Super. Ct. App. Div. June 15, 2011).

On July 20, 2011, Petitioner filed the instant habeas petition. (D.E. No. 1). He raises the following grounds:

> Ground One: PETITIONER'S RIGHTS UNDER THE FIFTH AMENDMENT OF THE CONSTITUTION WERE VIOLATED WHEN A STATEMENT OF CONFESSION WAS INVOLUNTARILY TAKEN AND ADMITTED INTO EVIDENCE AGAINST HIM AT TRIAL BY THE PROSECUTION.
>
> Ground Two: PETITIONER'S RIGHTS UNDER THE SIXTH & FOURTEENTH AMENDMENTS WERE VIOLATED BY THE TRIAL COURT WHEN IT FAILED TO PROPERLY VOIR DIRE A JUROR WHO WAS CLEARLY IN DISTRESS DURING TRIAL.
>
> Ground Three: PETITIONER'S RIGHTS UNDER THE SIXTH AMENDMENT WERE VIOLATED BY THE PROSECUTION'S HIGHLY PREJUDICIAL, AND THEREFORE, UNALLOWABLE STATEMENTS DURING ITS SUMMATION.
>
> Ground Four: PETITIONER'S RIGHTS UNDER THE SIXTH & FOURTEENTH AMENDMENTS WERE VIOLATED IN THAT HE RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL.

After this Court determined that Petitioner is entitled to equitable tolling of the statute of limitations for § 2254 petitions based on his inability to speak and read English, (D.E. No. 7), the Court entered an order requiring Respondents to file an answer, which they did, (D.E. No. 13). Petitioner then submitted a reply. (D.E. No. 21).

## II.   DISCUSSION

### A.   Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> . . .

4

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding . . . .

28 U.S.C. § 2254.

"As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011); *Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014). Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." *Id.* A federal court's authority to grant habeas relief is further limited when a state court has adjudicated petitioner's federal claim on the merits. *See* 28 U.S.C. § 2254(d).[2] If a claim has been adjudicated on the merits in state court proceedings, this Court "has no authority to issue the writ of habeas corpus unless the [state court's] decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or

---

[2] "[A] claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground." *Lewis v. Horn*, 581 F.3d 92, 100 (3d Cir. 2009) (quoting *Thomas v. Horn*, 570 F.3d 105, 117 (3d Cir. 2009)). "Section 2254(d) applies even where there has been a summary denial." *Cullen*, 131 S.Ct. at 1402. "In these circumstances, [petitioner] can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the [state court's] decision." *Id.* (quoting *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)); *see also Johnson v. Williams*, 133 S.Ct. 1088 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted").

'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)). However, when "the state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential standards provided by AEDPA . . . do not apply." *Lewis*, 581 F.3d at 100 (quoting *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001)).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court. *See Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA." *Parker*, 132 S.Ct. at 2155 (quoting 28 U.S.C. § 2254(d)(1)).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court applies a rule that "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different result.]" *Williams*, 529 U.S. at 405–06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. However, under § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (quoting

6

*Williams* at 410).   As the Supreme Court explains,

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision . . . . Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington*, 131 S.Ct. at 786 (citations and internal quotation marks omitted).

"If this standard is difficult to meet—and it is—that is because it was meant to be." *Burt v. Titlow*, 134 S.Ct. 10, 16 (2013) (citations and internal quotation marks omitted).   The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits.   *Cullen*, 131 S.Ct. at 1398.

    **B.   Analysis**

1. <u>Involuntary Confession (Ground One)</u>

In his first ground for relief, Petitioner alleges that he was "detained for questioning about a homicide that had occurred [and he] was not given his rights under *Miranda* before questioning began."   (Pet. ¶ 12(a)).   He further alleges that he was told by the detectives that if he did not answer questions, then he would never see his family again.   (*Id.*).   Petitioner states that because of those threats, he gave an oral statement confessing to the murder.   (*Id.*).

Petitioner first raised the question of a violation of his *Miranda* rights at a pre-trial hearing in state court.   (Resp'ts' Br., Ex. 19, Suppression Hr'g Tr., May 12, 1998, D.E. No. 13-20).   After hearing testimony, the court denied the motion to not allow Petitioner's statement into evidence, finding that "even if a custodial interrogation took place,, [sic] all the requirements of the law were met and defendant was fully advised of his Rights, and he freely, voluntarily waived those rights,

and at no time was he pressured, coerced or under any influence of drug or narcotic, and in both Spanish, Cliffside Park Police headquarters, as well." (*Id.* at 77:3-10).

Petitioner then raised this issue on direct appeal and in his first PCR petition. Both times it was rejected. On direct appeal, the Appellate Division held as follows:

> We first note that defendant's attack on the admission of his statements to the police is based on evidence developed at trial relating to credibility, not at the N.J.R.E. 104(c) hearing at which only Investigator Luis Alvarez and Detective John Palotta testified. Defense counsel may not have wanted to tip his hand on that subject by introducing evidence at the proceeding held pursuant to N.J.R.E. 104. In any event, while there are clear differences between a motion to suppress and a hearing designed to pass upon the admissibility of a defendant's statements, *see State v. Robinson*, 224 N.J. Super. 495 (App. Div. 1988), a defendant on appeal cannot attack the judge's prior pretrial ruling in either proceeding by reference to later developed trial testimony. *See State v. Gibson*, 318 N.J. Super. 1, 9 (App. Div. 1999); *State v. Gora*, 148 N.J. Super. 582, 592 (App. Div.), *certif. denied*, 74 N.J. 275 (1977). The evidence presented at the Rule 104 hearing in the present case justified the trial judge's admission of defendant's oral and written statements. As a result of our conclusion, we need not address the admissibility and impact of defendant's initial oral admissions to the police after being confronted by Julio Ramon Alvarez at headquarters and his statements to Alvarez and to his wife, even if his subsequent oral and transcribed statements to police may have been subject to attack.

(Resp'ts' Br., Ex. 3, *State v. Flores*, No. A-444-98T1, 2-3 (N.J. Super. Ct. App. Div. Dec. 20, 1999)).

The state court also rejected Petitioner's argument on PCR:

> Defendant argues that his statements to police were the product of coercion "due to the combination of express threats, a prolonged custodial interrogation, the Defendant's limited understanding of the English language, and the police's refusal to honor his invocation of his Miranda right to remain silent and to consult with a lawyer."

> On April 23, 1998 and May 12, 1998, a pretrial motion to dismiss hearing was conducted. There, Ivestigator [sic] Alvarez and Detective Palotta testified that on April 2, 1997 they and other investigators went to defendant's home, asked the defendant and his wife to accompany them to the police station for questioning and testified to the details of defendant's confession. At this hearing, the defense called no witnesses and the defendant did not testify. Here and on appeal, in an

effort to strengthen his ineffective assistance of counsel claim, defendant relies on facts that were not testified to nor presented at the motion to suppress hearing. The defendant now claims that the *Miranda* form was improperly explained to him; that an agent of the State (Investigator Alvarez) acted as translator and did not accurately translate and paraphrased important documents such as the *Miranda* form; that defendant repeatedly requested an attorney and was refused; that police threatened that if defendant did not confess to murdering Medina that defendant's pregnant wife would give birth to their unborn child in prison. However, defendant has failed to inform this Court what aspect of his trial attorney's performance was deficient at the motion to suppress hearing. Rather, the defendant argued in his brief that "[s]ince the suppression court erred in denying the Defendant's motion to suppress, and the Trial Court by admitting such statements at trial despite their involuntariness, the Defendant is entitled to a new trial." As noted earlier, defendant impermissibly relies on his own later-developed trial testimony to rebut earlier testimony by Investigator Alvarez and Detective Palotta.

The State urged this Court to note that defendant did not testify or present evidence on his behalf at the motion to suppress hearing and that a "defendant [is] duty-bound to present all his proofs concerning the alleged unlawfulness of the interception at the hearing on the suppression motion. He cannot now rely on evidence subsequently developed at the trial of the indictment to support his attack upon the pretrial ruling." *See State v. Gora*, 148 N.J. Super. 582,592 (App. Div. 1977).

The Court agrees with the State's position and further finds that this matter has been adjudicated by the Appellate Court's December 20, 1999 decision denying defendant's appeal. The Appellate Division held that a "defendant on appeal cannot attack the judge's prior pretrial ruling in either proceeding by reference to later-developed trial testimony."

Defendant argues that when Investigator Alvarez and Detective Palotta questioned him at the police station, they "failed to honor his invocation of this right to silence after he was given *Miranda* warnings and refused to waive his rights" and despite defendant's alleged repeated requests, he was questioned. However, here, as above, defendant is relying on his own later-developed trial testimony in an attempt to disprove testimony from an earlier hearing where only Investigator Alvarez and Detective Palotta testified. Further, the trial court found that defendant was "fully and properly advised [of his *Miranda* Rights]" and rejected the notion that simply "because someone is advised of the Rights in Spanish that they're not proper." The court further found Detective Alvarez's testimony "credible, believable." Additionally, this claim has been adjudicated by the Appellate Court's December 20, 1999 decision denying defendant's appeal.

(Resp'ts' Br., Ex. 7, PCR Opinion 14–16) (internal citations to the record omitted).

The Fifth Amendment provides, in part, that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Fourteenth Amendment incorporates the Fifth Amendment privilege against self-incrimination. *See Malloy v. Hogan*, 378 U.S. 1, 8 (1964). In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Court held that "without proper safeguards the process of in-custody interrogation . . . contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Id.* at 467. In other words, there is no doubt that, when police ask questions of a suspect in custody, and that suspect was never administered the required warning, *Miranda* dictates that self-incriminating, inculpatory statements made by the suspect are presumed compelled and they are excluded from evidence at trial in the State's case in chief. *See Oregon v. Elstad*, 470 U.S. 298, 317 (1985). Hence, a confession taken during a custodial interrogation without any *Miranda* warning facially violates the privilege against self-incrimination. *See Thompson v. Keohane*, 516 U.S. 99 (1995).

Conversely, a waiver of the right to remain silent renders self-incriminating, inculpatory statements admissible, and such waiver may be made orally, in writing or even implied by the interrogated person's conduct. *See North Carolina v. Butler*, 441 U.S. 369, 373 (1979); *United States v. Cruz*, 910 F.2d 1072, 1080 (3d Cir. 1990). Correspondingly, a trial court can properly admit a defendant's self-incriminating, inculpatory custodial statements if the court finds that the government met its preponderance-of-the-evidence burden of showing that the statements were made with a valid oral, written or manifested-by- conduct waiver. *See Colorado v. Connelly*, 479 U.S. 157, 168–69 (1986).

The question of whether the waiver at issue was "valid" is, invariably, resolved on a case-by-case basis. This is so because, under *Miranda*, a waiver is valid if it is made "voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 475. In determining whether there has been a valid waiver of *Miranda* rights, a court must conduct a two-part inquiry ensuing from the "totality of the circumstances" test. *See Moran v. Burbine*, 475 U.S. 412, 421 (1986). First, the court looks to the voluntariness of the waiver statement (or of the implied waiver, that is, if the waiver ensued from the suspect's conduct, which conduct might be the suspect's very rendition of the self-incriminating, inculpatory statement at issue) in order to determine whether the waiver was made "freely," as opposed to being obtained by coercion. *See id.* Second, the court must consider whether the waiver statement (or the implied waiver, if the waiver ensued from the suspect's conduct) was made "knowingly and intelligently," in the sense that the accused was fully aware "both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*

In conducting the aforesaid analysis, the court must take into account "both the characteristics of the accused and the details of the interrogation," *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973), by evaluating the subject's age, education, experience, background, and intelligence, as well as the capacity to understand the warnings given, the length of detention, the nature of questioning, the use of physical punishment, if any (such as prolonged deprivation of food, water, sleep, access to toilet facilities). *See id.*; *see also Fare v. Michael C.*, 442 U.S. 707, 725 (1979); *United States v. Swint*, 15 F.3d 286, 289 (3d Cir. 1994). In addition, the "totality of circumstances" approach directs the court to be mindful of the subject's familiarity with the criminal justice system, the timing of the *Miranda* warnings and the statement given. *See United*

*States v. Velasquez*, 885 F.2d 1076, 1086 (3d Cir.1989). *See also Yarborough v. Alvarado*, 541 U.S. 652 (2004).

In this case, the state courts properly applied the relevant Supreme Court precedent and found that Petitioner's rights had not been violated. The trial judge reviewed and considered Petitioner's and the police's actions under *Miranda* and found that Petitioner understood his rights and voluntarily confessed to the murder. At the pre-trial hearing, the state court found the testimony of Mr. Alvarez regarding the confession to be both believable and credible. Therefore, this Court finds that the state courts' adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

2. <u>Voir Dire (Ground Two)</u>

In the second ground of the petition, Petitioner argues that his Sixth Amendment rights were violated when the trial court failed to voir dire a juror who was "clearly in distress" during trial. Petitioner states that during the defense's summation, one of the jurors became visibly upset and in distress, causing the court to call for a five minute recess. (Pet. ¶ 12(a)). After the recess, the court did not inquire as to the reason for her distress. (*Id.*). The court also did not ask her if she would be able to continue in her service. (*Id.*).

Petitioner raised this issue on PCR, where the court denied him relief.

Defendant's argument that he is entitled to a new trial based on the trial court's comment concerning a juror being in distress is without merit. This Court points out that the trial court's comment concerning a juror in distress was made after defense counsel's summation and after the trial court mentioned at sidebar that the defense summation was "lengthy." The trial court also pointed out that the

12

> prosecutor needed a few moments to set up his easel prior to his closing remarks. It is only logical that the trial court noticed that the jurors needed an opportunity to stretch between closing remarks. There is no evidence that a juror was in such a state of distress to warrant a new trial.

(Resp'ts' Br., Ex. 7, PCR Opinion 19) (internal citations to the record omitted).

The Sixth Amendment guarantees a criminal defendant "the right to a . . . trial [ ] by an impartial jury." U.S. Const. amend VI. This right is applicable to a defendant in state court through the Fourteenth Amendment. *See Ristaino v. Ross*, 424 U.S. 589, 595 n.6 (1976). Jurors are presumed to be impartial. *See Irvin v. Dowd*, 366 U.S. 717, 723 (1961). Furthermore, a defendant's right to "due process does not require a new trial every time a juror has been placed in a potentially compromising situation . . . . Due process means a jury capable and willing to decide the case solely on the evidence before it[.]" *Smith v. Phillips*, 455 U.S. 209, 217 (1982). Thus, when there is an allegation of juror partiality, the trial judge must "'determine the circumstances, the impact thereof upon the juror, and whether or not [they were] prejudicial, in a hearing with all interested parties permitted to participate.'" *Id.* at 216 (quoting *Remmer v. United States*, 347 U.S. 227, 230 (1954)).

As discussed by the PCR court, this claim is clearly without merit. There is absolutely no evidence to suggest a lack of impartiality by any juror and there is no indication that the juror was in any distress other than that related to having to sit through the lengthy closing argument by defense counsel. Based on a review of the transcript, the trial court clearly took a five minute break to allow the state to set-up an easel and to allow the jury to stretch, since they had been sitting down for a substantial amount of time. Petitioner has put forth no evidence to indicate that the situation called for an inquiry into the juror's state of mind. The Court finds that the state courts' adjudication of this claim did not result in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

3. Prosecutorial Misconduct (Ground Three)

In the third ground of his petition, Petitioner argues that his Sixth Amendment rights were violated when the prosecutor impermissibly attempted to bolster the credibility of the state's witnesses during his closing statements by using the personal pronoun "I." (Pet. ¶ 12).

Petitioner raised this issue on PCR, albeit in the context of ineffective assistance of counsel. The court denied relief:

> Defendant also argues that during summation, the prosecutor improperly told jurors his personal beliefs. In his brief, defendant cites the following italicized words, taking them out of context, arguing that these constitute the personal opinion of the prosecutor:
>
>> "*I ask* you to evaluate the testimony you heard, look at it, and use your collective common sense, and upon doing that, ladies and gentlemen, *I believe* you'll come to the same conclusion." (June 23, 1998 Tr. p. 64 line 4-8); "*I think* you can infer from what happened during the course of the trial he didn't read his statement prior to coming in here." (June 23, 1998 Tr. p. 68 line 21–25); "*I urge* you to consider [testimony concerning the crime scene.]" (June 23, 1998 Tr. p. 72 line 1), etc.
>
> This Court points out that prior to explaining the law to the jury, the trial court instructed the jury that "[a]ny ideas you have as to what the law is or what the law should be, or any statements made by the attorneys as to what the law may be, must be disregarded if they're in conflict with my instructions of law." Additionally, the defendant did not raise this issue on direct appeal. Rule 3:22-4 states:
>
>> Any ground for relief not raised in a prior proceeding under this rule, or in the proceedings resulting in the conviction, or in a post-conviction proceeding brought and decided prior to the adoption of this rule, or in any appeal taken in any such proceedings is barred from assertion in a proceeding under this rule unless the court on motion or at the hearing finds (a) that the ground for relief not previously asserted could not reasonably have been raised in any

> prior proceeding; or (b) that enforcement of the bar would result in fundamental injustice; or (c) that denial of relief would be contrary to the Constitution of the United States or the State of New Jersey.
>
> Initially, this Court finds that the defendant could have, but did not raise this issue on appeal. Second, the defendant has failed to show that the prosecutor's statements prejudiced him or impermissibly influenced the jury's decision making. Further, the defendant has failed to prove that his attorney's failure to object to the prosecutor's summation rises to the level of ineffective assistance of counsel. Additionally, this Court finds that the trial court's cautionary instruction to the jury eliminated the possibility that the jury would be influenced by personal beliefs of any party.

(Resp'ts' Br., Ex. 7, PCR Opinion 18–19) (emphasis in original) (internal citations to the record omitted).

A criminal defendant's due process rights are violated if prosecutorial misconduct renders a trial fundamentally unfair. *See Darden v. Wainright*, 477 U.S. 168, 182–83 (1986). A habeas petition will be granted for prosecutorial misconduct only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 181 (internal quotation marks and citation omitted). A prosecutorial misconduct claim is examined in "light of the record as a whole" in order to determine whether the conduct "had a substantial and injurious effect or influence" on the jury's verdict. *See Brecht*, 507 U.S. at 638. A "reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001). A prosecutor is given wide latitude during closing arguments to ask the jury to draw inferences based on the evidence. *See United States v. Werme*, 939 F.2d 108, 117 (3d Cir. 1991).

Petitioner fails to show that he is entitled to federal habeas relief on this ground. The purported misconduct must be assessed in the context of the entire trial. Based on the comments

15

identified by Petitioner, it appears that he is arguing that the prosecutor simply should not have used the word "I" at any point in his summation. It is clear that the prosecutor's comments did not in any way infect the trial with unfairness. For these reasons, the state court denial of relief on this claim was not an unreasonable application of clearly established federal law and Petitioner will be denied relief on this ground.

4. <u>Ineffective Assistance of Counsel (Ground Four)</u>

In his final ground for relief, Petitioner argues that his Sixth Amendment rights were violated when trial counsel failed to challenge the introduction of an "involuntary, coerced confession by the State." (Pet. ¶ 12). Petitioner also alleges that he received ineffective assistance of appellate counsel when counsel "prosecuted a frivolous [sic] appeal by advancing unmeritorious issues." (*Id.*).

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *See Strickland*, 466 U.S. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 687–88. "[C]ounsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen*, 131 S.Ct. at 1403 (citing *Strickland*, 466 U.S. at 690). "To overcome that

16

presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances.'" *Id.* (citing *Strickland*, 466 U.S. at 688).

Further, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. *Id.*

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding' . . . Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011) (citing *Strickland*, 466 U.S. at 687). As the Supreme Court explained,

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Strickland*, 466 U.S. at 695–96.

The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

The *Strickland* test for ineffective assistance of counsel also applies to the performance of appellate counsel. *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). According to *Smith v. Robbins*, 528 U.S. 259 (2000), when the issue is appellate counsel's failure to raise specific issues, a petitioner satisfies the first *Strickland* prong by showing that appellate counsel was "objectively unreasonable [i.e.,] that counsel unreasonably failed to discover [arguably] nonfrivolous issues and to file a merits brief raising them." 528 U.S. at 285. An arguably nonfrivolous issue is "one that counsel can argue in good faith with some potential for prevailing." *Id.*

Petitioner's first ineffective assistance claim, that trial counsel failed to challenge the introduction of Petitioner's confession, is without merit. In fact, there was an entire pre-trial hearing regarding the admissibility of the confession, as discussed above. When Petitioner challenged counsel's performance at the hearing on PCR, the court found that "[b]ased on the *Strickland-Cronic-Fritz* test set forth above, the defendant does not meet any portion of his burden of proving that his counsel's performance was lacking. This court finds that Mr. Finckenauer was competent and used his professional judgment in making strategic trial decisions at the motion to suppress hearing." (Resp'ts' Br., Ex. 7, PCR Opinion 16). Petitioner clearly cannot meet the first prong of the *Strickland* test and the state court denial of relief on this claim was not an unreasonable application of clearly established federal law.

> With regard to appellate counsel's performance, the PCR court found the following:
>
> Defendant argues that his appellate counsel did not raise all issues that defendant sought to have raised on appeal. Specifically, defendant states that his appellate counsel did not raise all of the issues set forth in his post-conviction relief petition brief. However, nowhere in the record is there any evidence of the issues the defendant sought to have raised at appeal; rather, it appears from the record that on appeal, counsel raised a series of compacted arguments that mirror defendant's post-conviction relief arguments.
>
> Defendant has not met his burden under the *Strickland-Cronic-Fritz* test. He has failed to show how his attorney's performance was deficient or what other arguments his appellate counsel should have raised.

(*Id.* at 19–20).

The Court finds that the state court properly applied the *Strickland* test to evaluate appellate counsel's performance and determined that Petitioner had failed to meet his burden. Appellate counsel raised several issues on appeal and the state court found that his performance was not deficient. As such, the state court's denial of relief on this claim was not an unreasonable application of clearly established federal law.

### III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

19

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, no certificate of appealability shall issue.

## IV. CONCLUSION

For the above reasons, the § 2254 habeas petition is denied, and a certificate of appealability will not issue. An appropriate Order follows.

s/ Esther Salas<br>
**Esther Salas, U.S.D.J.**